# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 99-1678

EVERETT C. MAHL, APPELLANT,

V.

ANTHONY J. PRINCIPI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

Before FARLEY, HOLDAWAY, and STEINBERG, *Judges*.

## O R D E R

On December 7, 2000, the Court issued an order granting the Secretary's November 13, 2000, motion for remand. The July 30, 1999, decision of the Board of Veterans' Appeals, which denied the appellant's claim for entitlement to a rating in excess of 10% for post-traumatic stress disorder and for a total disability rating based on individual unemployability, was vacated and the matter remanded as required by the recent enactment of the Veterans Claims Assistance Act of 2000 (VCAA), Pub. L. No. 106-475, 114 Stat. 2096 (Nov. 9, 2000). On December 27, 2000, the appellant filed a motion for reconsideration and for a panel decision, urging the Court to rule on the appellant's allegations of error which were unrelated to the VCAA.

It has been the practice of this Court from the outset that, as a general rule, when an undoubted error requires that the Court order a remand, the Court will not address other putative errors raised by the appellant that are not necessary in effecting the proposed disposition. In short, if the proper remedy is a remand, there is no need to analyze and discuss all the other claimed errors that would result in a remedy no broader than a remand. In *Best v. Principi*, __ Vet.App. __, No. 99-1144 (May 15, 2001) (per curiam order), the Court noted that it generally decides cases on the narrowest possible grounds, and therefore is not required to rule upon other allegations of error in effecting a remand resulting from the VCAA's passage. That order also made clear that a judge may, at his discretion, determine that, while it is not necessary, it may be appropriate to address multiple allegations of error in remanding a case. *See also Dunn v. West*, 11 Vet.App. 462, 467 (1998) (the Court's remand of the appellant's PTSD claim under one theory mooted the remaining theories that would also mandate a remand of that claim); *Aronson v. Brown*, 7 Vet.App. 153, 155 (1994) (where issue becomes moot, the Court is divested of jurisdiction to consider it).

When this Court has, by single judge or otherwise, broadened its opinion beyond what is required, it has been the exception, not the rule. The Court's practice of limiting its opinions to the issue necessary to effect a remand is consistent with the jurisdictional statute under which the Court operates. That statute states that "in any action brought under this chapter, the Court of Appeals for Veterans Claims, *to the extent necessary to its decision* and when presented shall . . . (1) decide all

questions of law." 38 U.S.C. § 7261(a) (emphasis added). Of course, within the statutory definition of "to the extent necessary," there may be circumstances that would cause the Court, in its discretion, to touch upon another issue, whether raised by the appellant or not. However, such matters will be rare and will fall under the rubric of the "Court's discretion."

Considering only the issues necessary to the disposition of the case, or, in other words, deciding a case on the narrowest possible grounds, is the tradition in general appellate practice. *See, e.g., United States v. Shipsey*, 190 F.3d 1081, 1088-89 (9th Cir. 1999) (because the court held that the district court erred by constructively amending the theft counts in the indictment, requiring reversal and a remand for a new trial, the court need not reach the appellant's remaining challenges); *Umpleby v. Potter & Brumfield, Inc.*, 69 F.3d 209, 215 (7th Cir. 1995) ("While there were many procedural problems that occurred below, including the arguably erroneous admission of much evidence, we need not reach these issues in light of our decision to remand for a new trial"); *United States v. Young*, 17 F.3d 1201, 1205 n.9 (9th Cir. 1994) ("Because we find that [the appellant] is entitled to a new trial, we need not reach his claim that the district court abused its discretion in refusing to hear his motion to suppress the evidence found in his truck. . . . [The appellant] may renew his claim on remand"); *Dakota Industries, Inc. v. Ever Best Ltd.*, 28 F.3d 910, 914 (8th Cir. 1994) ("In light of our reversal and order of a new trial, we need not consider [the appellant's] arguments of other jury instruction and trial errors").

The statute and cases cited above which counsel judicial restraint are not only good law, but also make good, common sense. The new adjudication ordered by this Court is just that – a new adjudication. It will, necessarily, be conducted in an entirely different context legally and perhaps factually as well. The putative errors that the appellant raised before this Court concerning the "old" adjudication can be reasserted if he still believes that the "old errors" have been perpetuated and are relevant in the context of the new adjudication. The briefs before this Court will, presumably, be available. The adjudicators may then consider these matters for whatever value they may have, in the context of the new adjudication. If the appellant still believes error has been committed, he may then present that issue to this Court by way of an appeal. *See Kutcherousky v. West*, 12 Vet.App. 369, 372 (1999). The Court will continue the practice it has followed, which is consistent with its jurisdictional statute and appellate practice elsewhere; we will render our decisions on the narrowest possible grounds.

If this Court were to "lay down the law," as the dissent suggests we should, given the different factual and legal context in which the new adjudication will take place, such an opinion would be nothing more than advisory, amounting to awarding declaratory relief, which we are not authorized to do. *Nagler v. Derwinski*, 1 Vet.App. 297, 306-07 (1991). Even if we had jurisdiction to consider the appellant's non-VCAA arguments (*but see Aronson, supra*), we must be ever mindful of the "unwisdom of venturing an advisory opinion." *In re Smith*, 7 Vet.App. 89, 94 (1994) (J. Steinberg, dissenting); *see also Waterhouse v. Principi*, 3 Vet.App. 473, 474 (1992) (in order for there to be a case or controversy, the Court "must have the ability to resolve the conflict through the specific relief it provides").

2

Judge Steinberg's insertion of an EAJA rational for broadening our decisions beyond what is necessary to effect a disposition on the merits is also troubling. He would do this by labeling some allegations of error "colorable" and the rest, presumably, "non-colorable." Leaving aside that such labeling seems to be his own invention with a basis in neither statutory nor case law, it seems most unusual that a court would litigate the merits of a case, even partly, for *potential* EAJA purposes. In fact, to do so would be to render a decision, at least in part, as to an issue (EAJA) neither "presented" nor "necessary," to use the words of our jurisdictional statute. Moreover, such an adjudication would trigger two evils. By considering only "colorable" allegations of error, as Judge Steinberg would have us do, our action could and would be construed as an invitation to file an EAJA application, with assured approval, where "colorable" arguments are found or precluding successful EAJA applications where the arguments are found "non-colorable." Surely it must be clear that in the labeling process which finds certain issues "colorable" (meritorious) and others "non-colorable" (non-meritorious), the Court is actually adjudicating both issues with consequences for both EAJA (assuming that the dicta in *Cullens v. Gober,* 14 Vet.App. 234 (2001), referred to in the dissent, ever became the law) and, incidentally, for the new adjudication at the administrative level. Our treatment of an issue as "non-colorable" could be construed by an adjudicator as a decision on the merits that would preclude its consideration in the new adjudication. This would be unwarranted meddling in the new adjudication and, insofar as EAJA is concerned, would be an anomalous action for supposedly neutral judges to be taking at a time when there hasn't even been an EAJA application. The other evil is that it would surely encourage pleadings that were framed more for EAJA purposes rather than for obtaining the underlying relief for the veteran. The EAJA tail would be once again, as happens all too often in this Court, wagging the merits dog.

Upon consideration of the foregoing and the record on appeal, it is

ORDERED, by the single judge, that the appellant's motion for reconsideration is DENIED. It is further

ORDERED, by the panel, that the appellant's motion for a panel decision is DENIED.

DATED: June 7, 2001                                    PER CURIAM.


STEINBERG, *Judge*, dissenting: I agree that this case should be remanded for the Board of Veterans' Appeals (BVA or Board) to consider potentially applicable provisions of the Veterans Claims Assistance Act of 2000, Pub. L. No. 106-475, 114 Stat. 2096 (Nov. 9, 2000) (VCAA).[1] However, although the Court has latitude as to whether to consider contentions not raised to the

---

[1] *See Holliday v. Principi*, 14 Vet.App. 280, 286 (2001) (holding that Veterans Claims Assistance Act of 2000, Pub. L. No. 106-475, 114 Stat. 2096 (Nov. 9, 2000) (VCAA), is "potentially applicable to claims pending on the date of the VCAA's enactment"; that "the Court must avoid cutting off an appellant's rights under the VCAA by prematurely injecting itself into the [Department of Veterans Affairs (VA)] adjudication process and making determinations on issues that were not addressed by VA in the first instance"; and that, therefore, "at least at this time . . . this Court may not determine in the first instance the applicability of the VCAA" to an appellant's claim), *mot. for recons. denied*, __ Vet.App. ___, 2001 WL 430599 (Apr. 27, 2001) (per curiam order).

Board, *see Maggitt v. West*, 202 F.3d 1370, 1378 (Fed. Cir. 2000), I disagree with the Court's refusal to address certain of the appellant's arguments that are not predicated on the potential applicability of the VCAA. I do acknowledge that the majority's position is well presented and reasonable and has some precedential support, but only in terms of how best to exercise our judicial discretion.

## I. The Court Should Address All Colorable Arguments of Prejudicial BVA Error

### A. Addressing Multiple Grounds for Remand is Within Court's Proper Appellate Role

The appellant has made forceful and colorable arguments that the Board's adjudication of his claim contained errors that are capable of repetition on remand.[2] In such a situation, I believe that this Court, to which a claimant for Department of Veterans Affairs (VA) benefits has an appeal of right, *see* 38 U.S.C. § 7252, of a BVA decision by which he or she is "adversely affected" as long as he or she files a timely Notice of Appeal, 38 U.S.C. § 7266(a), has a responsibility to examine those errors asserted as separate bases for remand, and if the Court finds the appellant's assignment of error meritorious and the errors material then to so hold. *See* 38 U.S.C. § 7261(a) (mandating that this Court "shall . . . decide all relevant questions of law, interpret constitutional, statutory, and regulatory provisions, and determine the meaning or applicability of the terms of an action of the Secretary"). Unfortunately, in this case and in many other dispositions, this Court has been declining to examine those issues on the grounds that the arguments in question, even if successful, could not result in more than a remand, and that the appellant is free to present those issues to the Board as part of the VCAA remand proceedings. In so doing, the Court in effect returns the case to an appellant who, even if she or he was represented before this Court, might not be represented before the Board. Such potential lack of representation, coupled with the fact that it could be years before the appellant would have the opportunity to raise the arguments before the Board in the context of the remand proceeding (which might require a prior remand to a VA regional office for evidentiary development, for example), could well impair an appellant's ability to advocate those legal arguments effectively in the administrative process.

It is undeniable that, as noted in the December 2000 single-judge order remanding this appeal, on remand the appellant will be free to submit additional evidence and argument on the remanded claim. *See Kutscherousky v. West*, 12 Vet.App. 369, 372-73 (1999) (per curiam order). However, it is equally true that if the Court were to issue a decision holding that certain errors had occurred in the BVA's adjudication, the possibility that the Board would, on remand, repeat those same errors would be markedly reduced. *Cf. Stegall v. West*, 11 Vet.App. 268, 271 (1998) (remand by this Court confers on appellant right to VA compliance with terms of remand order and imposes duty on Secretary to ensure such compliance). In contrast, a refusal to examine those arguments

---

[2] The appellant asserts, inter alia, that the Board of Veterans' Appeals (Board or BVA) failed under 38 U.S.C. § 7104(a) to consider probative evidence in support of his claim (Brief (Br.) at 15-18); mischaracterized the contents of an October 1997 examination report and of Social Security Disability records (Br. at 18-21); and failed to consider adequately the benefit-of-the-doubt rule set forth in 38 U.S.C. § 5107(b), as it existed at the time of the Board decision, and the provisions of 38 C.F.R. § 4.7 (2000) (Br. at 21-23).

4

could very well force the appellant to litigate for a second time before us issues identical to those presented in the instant appeal -- an appeal over which we clearly have jurisdiction -- in order to obtain a decision from this Court regarding those issues.  Such a process would inevitably require the appellant to invest many more months and perhaps years of his life -- as well as, possibly, attorney fees -- in order to obtain a decision or decisions that he could and should get from us now if his arguments are valid.

I believe that it would be to the benefit of both the parties and the system of claims adjudication and judicial review for the Court to act to help avoid such delay and repetition where Board errors that may have affected the outcome of the Board decision and are reasonably susceptible of repetition on remand are presented to the Court.  *Cf. Dambach v. Gober*, 223 F.3d 1376, 1381 (Fed. Cir. 2000) (stressing need for certain cases "to be concluded" and suggesting that this Court has authority to "set a deadline by which veteran's case will be concluded").  Moreover, a ***precedential*** opinion of this Court recognizing the Board's errors and ordering their correction on remand would have applicability to every other case in which a claimant is similarly situated.

### B.  Limitation to Consideration of Colorable Arguments for Remand

I have a twofold rationale for my position that the Court should review an appellant's colorable non-VCAA-based arguments that would lead to a remand to the Board independent of the VCAA.  First, on remand the Board will be required to readjudicate the claim in light of the enactment of the VCAA and compare that result to the result that the appellant should have received prior to the enactment of the VCAA. *See Karnas v. Derwinski*, 1 Vet.App. 308, 313 (1991) ("where the law or regulation changes after a claim has been filed or reopened but before the administrative or judicial appeal process has been concluded, the version mo[re] favorable to the appellant should apply unless Congress provided otherwise or permitted the [Secretary] to do otherwise and the Secretary did so"); *see also Holliday v. Principi*, 14 Vet.App. 280, 286 (2001) (holding, in context of remanding claim for readjudication consistent with VCAA, that "there can be no question that Congress, which is presumed to be aware of that opinion and its progeny at the time of enacting the VCAA, clearly did not provide the specificity required by *Karnas* to disavow retroactivity"), *mot. for recons. denied*, __ Vet.App. ___, 2001 WL 430599 (Apr. 27, 2001) (per curiam order).  If the appellant can show that the BVA erred materially under pre-VCAA law, then it seems to me that in most cases the Court should order the BVA to correct that error in its readjudication of the claim under pre-VCAA law prior to making the required *Karnas* determination as to which law is more favorable.

Second, as to my rationale for the Court's reviewing only arguments that would produce a remand for the appellant (as opposed to an affirmance of the BVA's pre-VCAA decision), I believe that it is unwise as a policy matter, and may even be *ultra vires*, for the Court, before the Board has considered the effect of the VCAA, to engage in judicial review that would, by affirming the BVA decision on appeal regarding its pre-VCAA denial of the benefit sought, prevent VA from awarding the benefit sought on remand based on pre-VCAA law.  *Cf. Nolen v. Gober*, 222 F.3d 1356, 1360

5

(Fed. Cir. 2000) (holding that this Court cannot vacate a VA determination favorable to a claimant because by making such a determination, VA "has waived any further challenges on the issue"); *Schroeder v. West*, 212 F.3d 1265, 1271 (Fed. Cir. 2000) (holding that VA must adjudicate all possible legal bases for award of service connection and Court cannot affirm BVA decision denying such award on one ground when another ground remains open); *Sachs v. Gober*, 14 Vet.App. 175, 179 (2000) (VA has duty to adjudicate all possible bases for award of dependency and indemnity compensation (DIC) when presented with claim for DIC that is well grounded on one basis).

## C.  Other Considerations

Furthermore, I do not believe that we should be blind to the potential pitfalls that the Court's approach will have in the case of a represented appellant in the event of a subsequent application for attorney fees and expenses pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(2)(F) (EAJA).  These pitfalls emerge starkly from the debate between the dueling separate concurring opinions in *Cullens v. Gober* on the question of the wisdom of extending the Court's holding there beyond the context of an EAJA case where the merits appeal was dismissed as moot as a result of the parties' settlement agreement; the Court held there that it "can, and must, look beyond the [m]otion [to dismiss because of a settlement between the parties], [joint a]greement, and Court order [granting the motion to dismiss] to determine whether the position of the United States at the administrative level was substantially justified." *Cullens*, 14 Vet.App. 234, 241 (2001) (en banc). *Compare id.* at 248-50 (Kramer, C.J., concurring) (agreeing with standard set forth in majority opinion "with respect to settled cases . . . [, but opining] that that standard is not appropriate in cases where there is a Court remand"), *with id.* at 244-48 (Farley and Ivers, J.J., concurring) (proposing that majority holding ought to be extended based on assertion that Court's consideration of only content of, "e.g., a joint motion to remand" as "determinative" of question of whether Secretary's position was substantially justified "is inconsistent" with Supreme Court precedents).

If Judge Farley's concurring view in *Cullens* prevails, and the Court ultimately determines that post-merits-stage review of the record of the merits litigation is necessary at the EAJA stage in order to determine whether the Secretary's position was substantially justified, it would seem to behoove the Court as to arguments presented by an appellant at the merits stage to undertake a review of such arguments ***at the time that those arguments are presented***, as part of the merits stage rather than after the issuance of the Court's mandate on the final disposition of the merits of the case by the Court.  Otherwise, we would be confronted with the anomaly that the Board might not be bound in readjudicating the case by decisions made ***as to*** the merits of the BVA's prior decision (but not as part of the Court's review of the BVA decision) long after the case has been remanded to the Board by the Court and perhaps even after some adjudication on remand had already taken place. Such post-facto decisions would appear to me to be "advisory" vis-a-vis the merits of the BVA decision in question because such decisions are made after the Court's review of the merits is

completed. *See Aronson v. Brown*, 7 Vet.App. 153, 169-70 (1994) (Steinberg, J., concurring); *In re Motion of Smith*, 7 Vet.App. 89, 93-94 (1994) (en banc order) (Steinberg, J., dissenting).[3]

I want to stress that what result the Court reaches on the merits of a case should not be influenced by any consideration of whether or not an EAJA application will ultimately be filed. The above-described complication merely reinforces my belief that if we are presented during the merits litigation with BVA adjudication errors we should generally hold them to be such as part of the merits review of the appeal. In the case of a pro se appellant, I believe that the points set forth in the first five paragraphs of this dissent compel the position that I have taken herein. Hence, the practice I would follow would not be, notwithstanding the majority's assertion to the contrary, the "EAJA tail . . . wagging the merits dog."[4] *Ante* at __, order at 3.

## II. The Court's Practice of Addressing Multiple Grounds for Remand and Jurisdiction to Do So

The majority here appears to articulate a maxim that once the Court identifies "an undoubted error" made by the Board, the Court generally should not consider any other Board errors. As I said at the outset of this dissent, such a general guideline for the exercise of judicial discretion is not unreasonable, although it is not one that I would follow without regard to the situation -- and would not follow in this case. However, the majority goes on to cloud the situation by seeming to premise its viewpoint on some kind of jurisdictional basis. If the majority does not wish to raise a jurisdictional barrier, why does it cite to *Dunn v. West*, 11 Vet.App. 462, 467 (1998), with the parenthetical explanation: "[T]he Court's remand of the appellant's PTSD claim under one theory mooted the remaining theories that would also mandate a remand of that claim" (*ante* at __, order at 1), followed immediately by a cite to *Aronson*, 7 Vet.App. at 155, with the following parenthetical: "[W]here issue becomes moot, the Court is divested of jurisdiction to consider it" (*ante* at __, order at 1), and then later say: "Even if we had jurisdiction to consider the appellant's non-VCAA arguments (*but see Aronson, supra*)" (*ante* at __, order at 2)? The imposition of any such dramatic limitation on this Court's jurisdiction would be a seriously flawed approach. As the Supreme Court has just stressed in a not unrelated context:

---

[3] It is, indeed, ironic that my colleagues and I are, in effect, each suggesting that the approach of the other would result in dispositions that could be, in a sense, advisory in nature. Although I do not accept that characterization of my approach, I believe that the Court is on far sounder grounds in deciding a *merits* issue at the time of the *merits* litigation, when the disposition can affect the merits outcome on remand, than in deciding that ground only for purposes of litigation under the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(2)(F) (EAJA).

[4] In all candor, of course, I must acknowledge that a represented appellant probably has a better chance of successfully presenting a non-VCAA ground for remand. That is, after all, what counsel are for -- to make the best arguments for their clients. Hence, it is really "the attorney-representation tail wagging the merits dog". Whether or not EAJA fees would follow from such a successful non-VCAA argument would depend on the provisions of EAJA law in 28 U.S.C. § 2412(d) and our caselaw. *See, e.g., Cullens v. Gober*, 14 Vet.App. 234, 237, 240 (2001) (en banc) (outlining basic EAJA eligibility and award criteria).

7

"It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice" unless it is "absolutely clear that the alleged wrongful behavior could not reasonably be expected to recur."

*Buckhannon Board and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources*, __ U.S. __, __, No. 99-1848, 2001 WL 567728, at *6 (May 29, 2001) (quoting *Friends of Earth, Inc. v. Laidlaw Environmental Service (TOC), Inc.*, 528 U.S. 167, 189 (2000) (internal quotation marks and citations omitted)).

### A. Longstanding Court Precedent Addressing Multiple Remand Grounds

The first and most obvious flaw in the majority's position is the bald assertion, with no supporting authority, that it "has been the practice of this Court from the outset that, as a general rule, when an undoubted error requires that the Court order a remand, the Court will not address other putative errors raised by the appellant that are not necessary in effecting the proposed disposition." *Ante* at __, order at 1. A simple perusal of the Court's precedential opinions demonstrates that this Court has **never** articulated or followed a "one-remand-ground per customer" practice. From the beginning, the Court has issued opinions that articulated multiple grounds for remand, as well as opinions that provided guidance, separate and apart from the basis for remand, to the Board as to its readjudication of the remanded claim.[5] Judges of this Court have continued to produce such opinions, and the members of the majority here are no exception to this practice.[6] For example, as

---

[5] There are several opinions published in Volume 1 of *West's Veterans Appeals Reporter in which one or both of the judges in the majority here joined* that either assigned multiple errors to the Board or provided what would appear to contain an "advisory opinion" under the rationale set forth by the majority today. *See, e.g., Schafrath v. Derwinski*, 1 Vet.App. 589, 591 (1991) ("[t]he BVA decision contains four errors: (1) failure to apply applicable regulations . . . ; (2) failure to provide reasons or bases for aspects of its decision . . . ; (3) failure to obtain certain requested VA medical records . . . ; and (4) failure, on its own, to obtain prior treatment records and to order a contemporaneous medical examination"); *Schaper v. Derwinski*, 1 Vet.App. 430, 434-37 (1991) (remanding for BVA to consider validity of debt *and also* finding error as to retroactive release of liability "assum[ing] that the debt was valid"); *Martin v. Derwinski*, 1 Vet.App. 411, 412-13 (1991) (Court remands due to BVA's failure to consider both 38 C.F.R. §§ 3.310(a) *and* 4.59); *Ferraro v. Derwinski*, 1 Vet.App. 326 (1991) ("[t]he Court *holds that the BVA did not provide adequate reasons or bases* . . . . [and t]he Court *further holds that VA failed to assist* appellant in gathering enough information to make an adequate determination of his claim *and, further, that the BVA failed to consider appellant's claim under the criteria for non-service-connected pension*" (emphasis added)).

[6] In addition to the 14 Vet.App. cases cited in note 8, *infra*, members of the majority in the instant case have written or joined in a vast number of opinions that remanded a claim based on more than one Board error or that provided additional instruction beyond the remand ground. *See, e.g., Ralston v. West*, 13 Vet.App. 108, 113 (1999) ("After reviewing the evidence, the Court will accept the Secretary's concession that a remand is appropriate for the Board to provide adequate reasons and bases for its decision without securing a medical opinion. . . . *Furthermore*, the Board is required to discuss each of the criteria found in 38 C.F.R. § 3.352 to determine if the veteran met the requirements for aid and attendance and housebound or 'permanently bedridden' benefits." (emphasis added)); *Falk v. West*, 12 Vet.App. 402, 405 (1999) (after assigning BVA error conceded by Secretary, Court stated that its "analysis *cannot* end there" (emphasis added), and discussed "a further record deficiency"; noted error as to Board's failure to consider "the equipoise doctrine"; *and* "recommend[ed] that due attention be

of this writing, in the *West's* advance sheets for the most recent volume (Volume 14), 19 cases remanded claims to the Board and in 9 of those the Court either provided more than one basis for remand or provided instruction beyond the narrow remand ground.[7] Moreover, the judges who are in the majority participated in 6 of those 9 very recent cases.[8]

As to the majority's assertion that it "is the tradition in general appellate practice" to decide a case on the "narrowest possible grounds", *ante* at \_\_, order at 2, I note that the majority lacks the authority to make any such holding because the Court has, as shown above, frequently issued opinions that are at odds with any such "narrowest possible grounds" rule. *See Bethea v. Derwinski*,

---

given to 38 U.S.C. § 1154(b) upon readjudication"); *Pond v. West*, 12 Vet.App. 341, 345-46 (1999) (holding that Board failed to consider certain evidence *and* breached the duty to assist); *Spurgeon v. Brown*, 10 Vet.App. 194, 196-99 (1997) (remanding due to inadequate statement of reasons or bases *and* failure to comply with 38 C.F.R. § 3.159); *Hayes v. Brown*, 9 Vet.App. 67, 73-74 (1996) (remanding due to inadequate statement of reasons or bases and due to violation of duty to obtain certain records).

Indeed, in a case decided on March 21, 2001, one of the judges in the majority, after holding that a "remand is required" for "readjudication in light of the VCAA" as to a certain claim (for Ghon's complex), went on to point out a specific BVA adjudication mistake as to that claim, as follows:

> Further, in adjudicating claims, the Board is required to base its decisions upon all evidence and material of record and to consider all applicable provisions of law and regulation. 38 U.S.C. § 7104(a); *see also* 38 C.F.R. § 3.303(a) (2000). The Board must provide an adequate written statement of the reasons or bases for its findings and conclusions on "all material issues of fact or law presented on the record." 38 U.S.C. § 7104(d)(1); *see also Gilbert v. Derwinski*, 1 Vet.App. 49, 56-57 (1990). The Court agrees with the appellant that in denying an increased rating for Ghon's complex, the Board erroneously failed to discuss a May 1998 VA medical opinion . . . .

*Williams v. Principi*, No. 99-2255, 2001 WL 282669, at *2 (Vet. App. Mar. 21, 2001) (single-judge order).

[7] *See Holliday*, 14 Vet.App. at 200 (holding that "all provisions of the VCAA are potentially applicable to claims pending on the date of the VCAA's enactment"); *Woods v. Gober*, 14 Vet.App. 214, 218-23 (2000) (Court remands claim because presumption of regularity was rebutted (part II.A.) and for violation of *Stegall v. West*, 11 Vet.App. 268 (1998) (part II.B.)); *Sachs v. Gober*, 14 Vet.App. 175, 180 (2000) (Court orders Board to take certain actions only if Board, on remand, finds certain facts to be true), *superseded in part by Sachs v. Principi*, 14 Vet.App. 298 (2001) (vacating Board decision in light of enactment of VCAA); *Nolen v. Gober*, 14 Vet.App. 183, 184 (2000) (assigning error as to duty-to-assist violation and as to failure to apply 38 U.S.C. § 1154(b) properly); *Campbell v. Gober*, 14 Vet.App. 142, 144 (2000) ("[o]nce the Board determines that a claim is well grounded . . . this Court must address on its merits *any* argument that the Secretary failed to fulfill the duty to assist" (emphasis added)); *Timberlake v. Gober*, 14 Vet.App. 122, 131-35 (2000) (vacating and remanding for consideration of 38 U.S.C. § 1318 and providing instruction to BVA if it finds that section 1318 applies to remanded claim; also noting that Court "need not address *in detail* the remaining arguments" raised by the appellant and briefly addressing those arguments (emphasis added)); *Stone v. Gober*, 14 Vet.App. 116, 118-21 (2000) (remanding due to inadequate statement of reasons or bases and due to violation of duty to assist, *and then* considering "additional arguments raised in the appellant's brief"); *McCormick v. Gober*, 14 Vet.App. 39, 50 (2000) (remanding with orders to BVA to correct three separate and distinct errors, each of which could have served as independent remand ground); *McGrath v. Gober*, 14 Vet.App. 28, 35 (2000) (advising BVA as to how to adjudicate remanded claim if certain facts are found).

[8] *See Sachs*, *Nolen*, *Campbell*, *Timberlake*, *Stone*, and *McGrath*, all *supra*.

9

2 Vet.App. 252, 254 (1992) (panel decisions constitute "binding precedent" unless overturned by en banc opinion of this Court or decision of U.S. Court of Appeals for the Federal Circuit (Federal Circuit) or Supreme Court). Moreover, as support for its assertion that its action is consistent with "the tradition in . . . appellate practice", the majority cites as persuasive authority cases of the Seventh, Eight, and Ninth circuits, but fails to reconcile recent precedent of the Federal Circuit, whose precedent opinions are binding on the Court, rather than merely persuasive, that obviously does not follow the jurisdictional approach put forth by the majority today.[9] *See ibid.*

### B. Undefined Term "Undoubted Error"

Besides failing to address clear precedent to the contrary, a second flaw is the majority's apparent application of the jurisdictional doctrine of mootness to the consideration of other than "an undoubted error", and the majority's failure to define that term. Presumably, the majority believes that a failure to consider the VCAA is "an undoubted error"[10] and that the non-VCAA arguments put forth by the appellant in the instant case are not examples of "undoubted error". (Or is it that the VCAA error is "undoubted" and the Court lacks jurisdiction to consider the errors asserted by the appellant here even if they *also* are "undoubted"?) I question whether there is a principled basis for such a distinction between the different arguments at issue here, and whether that distinction can withstand scrutiny in view of the overwhelming weight of precedent addressing more than a single "undoubted error". I also question whether any such distinction could be evenhandedly applied by the Court in future cases.

### C. Jurisdiction Predicated on Valid Notice of Disagreement

Further, there is the fact that this Court's appellate jurisdiction to review a final BVA decision timely appealed here, *see* 38 U.S.C. § 7266(a)*,* is premised not on whether "an undoubted error" has been identified but rather upon whether a valid Notice of Disagreement (NOD) was filed on or after November 18, 1988, as to the underlying VA regional office (RO) decision. *See* Veterans' Judicial Review Act, Pub. L. No. 100-687 § 402, 102 Stat. 4105, 4122 (1988) (found at 38 U.S.C. § 7251 note); *Velez v. West*, 11 Vet.App. 148, 157 (1998) ("Court has no jurisdiction over an issue absent a post-November [17], 1988, NOD, expressing disagreement with a [VA]RO decision on that issue or with an RO's failure to adjudicate that [issue]"); *see also Barrera v. Gober*, 122 F.3d 1030, 1031 (Fed. Cir. 1997); *Grantham v. Brown*, 114 F.3d 1156, 1157 (Fed. Cir. 1997), *rev'g* 8 Vet.App. 228

---

[9] *See, e.g. Nolen v. Gober*, 222 F.3d 1356, 1361 (Fed. Cir. 2000) (holding that this Court erred by prematurely considering well groundedness, but also noting Court error as to its consideration of nonprejudicial-error rule); *Winters v. Gober*, 219 F.3d 1375, 1361 (Fed. Cir. 2000) (vacating this Court's opinion for failure to consider *Hodge v. West*, 155 F.3d 1356 (Fed. Cir. 1998), *both* because Court "exceeded its statutory authority" *and* because Court "prejudiced [appellant] by basing its decision on a different ground from that relied on by the Board"); *Schroeder v. West*, 212 F.3d 1265 (Fed. Cir. 2000) ("[b]ecause th[is Court]'s decision applies an incorrect standard of proof to the evidence presented *and* is based on de novo fact finding by th[is Court], it must be vacated and the case remanded" (emphasis added)).

[10] I am puzzled as to how the Board could have made an "error" by not considering a law not yet enacted at the time of the Board decision, but that is the least of my concerns at this point.

(1995).  Once a valid NOD has been filed as to a particular claim, the Court has jurisdiction over that claim and the Board is required to follow *all* of the Court's orders or instructions as to the adjudication of that claim, *see Stegall*, *supra*, unless and until the Court's orders or instructions are rendered moot because the benefit sought has been awarded to the claimant.

### D.  VCAA Remand Does Not Render Other Issues Moot

Moreover, in a case such as this one where a claim is remanded pursuant to *Karnas*, *supra*, the issue whether the appellant could be entitled to the benefit sought on appeal under the law as it existed prior to the enactment of the VCAA is still very much in contention because *Karnas* requires consideration of both old and new law, with the ultimate application of the law that is more favorable to the claimant.  Thus, a simple vacatur of a Board denial of a claim and remand for the Board to consider the VCAA does *not* render all other issues as to that claim moot; it is certainly not "absolutely clear that the alleged wrongful behavior [by the Board] could not reasonably be expected to recur", *Buckhannon*, *supra* (internal quotation marks omitted; citation omitted).  On the other hand, if it is the majority's position that once the Court vacates a Board decision based on "an undoubted error", that Board decision no longer exists and thus the matters raised therein are moot, I note that the Court is *not* ultimately divested of its statutory jurisdiction until the Court's mandate has issued, *see* U.S. VET. APP. R. 41(b), and when that occurs the Court is divested of jurisdiction over the entire claim -- *including* the issue that served as the basis for remand.

Thus, I fail to see how a colorable argument as to a basis for remand could be mooted by virtue of the Court's having identified "an undoubted error".  I can understand why the Court might not *choose to exercise* its jurisdiction over such an argument in certain instances, and, as I have said above, I have less quarrel with the majority's decision *as a matter of the exercise of discretion* (although I disagree with it in this particular case, as my earlier discussion in part II makes clear).  However, as indicated above, I believe that any suggestion that the Court lacks *jurisdiction* to consider such argument is unsustainable and inconsistent with controlling precedent.

### III.  Conclusion

For all of the foregoing reasons, I would grant the appellant's motion for a panel decision and review the colorable allegations of errors that he makes before this Court, so that, if the Court were to agree with the appellant and find that the Board had made a material error that would if not corrected likely be prejudicial to the outcome of the appellant's claim on remand, the Secretary could then ensure that such error or errors would not recur in the subsequent readjudication on remand. *See Stegall*, *supra*.

11